## Pfeiffer v. Dyer, Appellant.

Argued January 8, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Walter Biddle Saul,* of *Saul, Ewing, Remick & Saul,* for appellant.—Plaintiff may not prove a special contract in regard to the method of fixing a fee and, in disregard of this method and in flat violation of its terms, claim a fee based on the value of his services as testified to by other surgeons.

A surgeon, without any agreement as to the amount of his fee, may not recover a fee based on what other surgeons would have charged or think proper, which fee is admittedly more than his own customary charge for the particular service.

*Ralph B. Evans,* of *Evans, Bayard & Frick,* for appellee.—The case does not present any real question of law. Even if it be assumed that the statement made by plaintiff, regarding his customary method of fixing a fee, amounted to a contract that his fee was to be satisfactory to defendant, there was abundant evidence from which the jury could find, as they did, that defendant's expressed dissatisfaction was not sincere or honest.

308

Opinion by Mr. Justice Schaffer, January 28, 1929:

This suit was brought by plaintiff, a physician and surgeon of standing in his profession, to recover the amount claimed to be due him for professional services and skill in performing a major operation upon the wife of defendant; included therein are his diagnostic services prior to the operation and his attendance upon her thereafter until she had recovered. The amount claimed to be due was $3,000, and the jury rendered a verdict for the full amount sought, with interest. Judgment followed the verdict and from it defendant appeals.

For some months prior to the date when plaintiff was called into consultation, defendant's wife had been in poor health. No sufficient or satisfying diagnosis had been made of her condition by the doctors who had examined her. Plaintiff, after subjecting her to a physical examination and other scientific determinations, including blood tests and X-ray examinations, reached the conclusion that she was suffering from a malignant cancer of the large intestine. Defendant had at least two interviews with plaintiff, in which his wife's condition was discussed, and was advised that an operation was necessary if she was to live. At the conclusion of the last interview, when the operation had been determined upon, defendant said to plaintiff that he was going to ask what his charges would be "but I won't bother with that. I am able to pay." Plaintiff replied that it was his custom to charge a fee satisfactory to the patient, to the family doctor and to himself; no figure was named and nothing further was said on the subject of compensation.

While the operation was under consideration, Mrs Dyer developed an obstruction of the bowel which made an immediate operation imperative. Plaintiff, in this emergency, performed what is described as a somewhat rare operation, or rather triple operation, requiring, as surgeons of repute testified, the highest surgical skill. The first of the series of operations was performed on December 5th and the last on January 11th. As a re-

sult of plaintiff's surgery, the obstruction in the bowel was obliterated, the cancer removed, the continuity of the bowel, following the dissection of the cancerous part was restored, and the woman's life was saved; no return of the cancer has manifested itself in three years, and she is now in good health. At the end of his services, plaintiff advised with other surgeons of established reputation and the family physician as to what would be a proper charge for his services and they measured their value at from two to five thousand dollars. He sent defendant a bill for $3,000, which the latter angrily refused to pay, saying that the charge should have been $300, but that he would pay $500. Not being able to obtain satisfaction from the husband, plaintiff wrote to the wife asking whether she could help in finding a way out of the disagreeable situation which had developed between himself and her husband. In the course of this letter, plaintiff said: "Taking the very remarkable results secured into consideration as well as the long continued treatment in separate stages calling for unusual qualification for such work I felt that everyone would agree that a generous compensation was justified. I sent Mr. Dyer a bill for $3,000, which is, I admit, a large fee, and more than I would have asked on my own initiative as I am distinctly a modest charger, but I did this on excellent advice and in the belief that it would work no hardship on you, as I know that Mr. Dyer is a prosperous man who does not hesitate over such a sum when it concerns anything that pleases him." It is urged upon us that this communication shows that plaintiff himself recognized that his charge was excessive. We think under all the surroundings it cannot be so construed; in effect he was saying that he had fixed what he thought was a proper charge after being advised by those qualified to measure it.

Appellant argues that plaintiff had, in the conversation which occurred between them prior to the operation, entered into a special contract as to the amount of com-

pensation for the services which was to be rendered to the wife, when he said: "It is my custom to charge a fee that is satisfactory to the patient, to the family doctor and to myself." If this statement amounted to a contract, which we are of the opinion it did not, appellant would not be in good case, because the fee charged was satisfactory to the family physician, who so testified, and to the plaintiff—so far as the patient is concerned no dissatisfaction has been expressed; but, even supposing that defendant voices a dissatisfaction on her part, he alone under what he alleges to be the contract cannot fix the compensation, and it could only be determined by the opinion of other physicians qualified to speak on the subject.

Appellant's able counsel in the second branch of his argument advances a somewhat novel and startling proposition as to the fees of professional men—that "A surgeon, without any agreement as to the amount of his fee, may not recover a fee based on what other surgeons would have charged *or think proper,* which fee is admittedly more than his own customary charge for the particular service," which would mean that a physician, once having fixed his fee for a given service, never could increase it, or that the modest surgeon, who has been a modest charger and who has attained great skill, could not in a proper case receive the fair compensation to which others also of high professional standing believe him entitled. We would hesitate long before subscribing to such a rule, particularly in view of the services rendered by physicians to the afflicted without thought of compensation, customary or otherwise, of which plaintiff's own experiences are, we think, a fair sample. Pressed on cross-examination to state his customary fee for such an operation as that here involved, he said that in over twenty years' experience in surgery he had performed the operation six times, three times for nothing, and in explanation added that over half of his professional work was done for charity. This state of affairs

the law must recognize, that physicians should not have their services valued as you would commodities in trade by a fixed standard; what would be a proper charge for the same service to a man fully able to pay would be excessive to a man of limited means, and what would be willingly done for the indigent without thought of financial reward should be compensated for by one who can afford to pay on the scale which doctors of repute measure as the proper one. Only on such a basis can those who devote their lives to ministering to human suffering in some degree be fairly paid: Succession of Levitan, 143 La. 1025, 79 So. 829; Young Bros. v. Succession of Von Schoeler, 151 La. 73, 91 So. 551. As was said in the Levitan Case: "It is a matter of common information that physicians and surgeons do not regulate their charges by any fixed standard of pecuniary value, but, to a certain extent, base them on the ability of the patient to pay, and, on that basis, more frequently than otherwise, perhaps, are but poorly compensated."

The defendant did not take the stand to support the position he had assumed nor did he call any doctor to say that appellee's charge was not fair. We regard the verdict as a proper one which should not be disturbed.

The judgment is affirmed.